# EXHIBIT A



**Vorys, Sater, Seymour and Pease LLP**
**Legal Counsel**

52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216–1008

**614.464.6400 | www.vorys.com**

**Founded 1909**

Tyler B. Pensyl
Direct Dial   (614) 324-2938
Email Standard_Proc@vorys.com

September 26, 2018

## VIA OVERNIGHT DELIVERY

Deal Point Trading
c/o Eric O'Bannon
10755 Scripps Poway Parkway
San Diego, CA 92131

10639 Dabney Drive
San Diego, CA 92126

       Re:     Unauthorized Sales of Products Bearing Standard Process Trademark

Dear Mr. O'Bannon:

Standard Process Inc. ("Standard Process") has retained our law firm to represent it in connection with the unauthorized sales of Standard Process Inc.® and Standard Process Veterinary Formulas™ products ("Standard Process Products") on the Internet. We have discovered that you are selling Standard Process Products through the "Great Buys & Bargains" storefront on www.amazon.com ("Amazon"). Unless you remove all Standard Process Products from your Amazon storefront and all other unauthorized websites, stop selling any and all Standard Process Products immediately, and identify all sources of Standard Process Products you are selling, we intend to file a lawsuit against you.

**I.    Standard Process Products May Only Be Sold By Approved Resellers Through Authorized Channels Implementing Standard Process's Quality Controls.**

Only resellers expressly authorized by Standard Process (hereinafter, "Authorized Resellers") are permitted to sell Standard Process Products. Authorized Resellers are required to sell products only in certain channels and to abide by Standard Process's Resale Policy and/or other company policies (collectively, the "Policies"). It is only by limiting authorized sales to Authorized Resellers who are required to follow the Policies that Standard Process is able to ensure the satisfaction of consumers and to maintain the integrity and reputation of the Standard Process brands. For these reasons, all individuals and entities—including Authorized Resellers—are prohibited from selling Standard Process Products on the internet or any e-

Columbus  |  Washington  |  Cleveland  |  Cincinnati  |  Akron  |  Houston  |  Pittsburgh



Deal Point Trading
September 26, 2018
Page 2

commerce format without the prior written consent of Standard Process[1] or through Patient Direct by Standard Process.[2]

## II.   Your Sales of Standard Process Products Are Unlawful.

To protect the Standard Process brands and prevent consumer confusion, Standard Process has secured a number of trademarks relating to its business (collectively, the "Standard Process Trademarks").[3]   Standard Process is the only entity permitted to use or license the Standard Process Trademarks in the United States.  By selling Standard Process Products on unauthorized websites without the quality controls or any of the unique benefits that only Authorized Resellers can provide, you are using Standard Process Trademarks illegally.  Your repeated use and misappropriation of one or more Standard Process Trademarks constitutes trademark infringement pursuant to 15 U.S.C. § 1114, unfair competition and false advertising pursuant to 15 U.S.C. § 1125(a), and a violation of numerous state laws.

### A.   Your Sale of Standard Process Products is Likely to Cause Consumer Confusion and Infringes on Standard Process Trademarks.

Your use of Standard Process Trademarks through online sales is likely to cause confusion, to cause mistake, or to deceive consumers because it falsely suggests, among other things, that (1) you are affiliated with or sponsored by Standard Process, (2) the products you sell are delivered with all the same benefits, characteristics, and quality controls as Standard Process Products sold by Authorized Resellers in authorized channels, and (3) Standard Process approves of the products you sell.  *See* 15 U.S.C. § 1114; *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 n.1 (2d Cir. 2003).  Because the products you sell are not distributed in accordance with the quality controls or with the benefits established by Standard Process, **the products you sell are not genuine Standard Process Products**. *Shell Oil Co. v. Commercial Petroleum, Inc.,* 928

---

[1] Pursuant to the Policies, Authorized Resellers are not permitted to sell Standard Process Products on the internet or any e-commerce format without the prior written consent of Standard Process.  If you are an Authorized Reseller, your sale of Standard Process Products on Amazon, eBay, or other unauthorized websites violates the Policies.  If you continue to sell Standard Process products through unauthorized channels, Standard Process may cease doing business with you and you could be subject to monetary damages and injunctive remedies.

[2] Healthcare practitioners may sell Standard Process Products through Patient Direct by Standard Process (where available).

[3] The Standard Process Trademarks include, but are not limited to, STANDARD PROCESS® (U.S. Trademark Reg. No. 2,329,616); SP® (U.S. Trademark Reg. Nos. 2,469,448, 2,888,707, and 3,618,534); CATALYN® (U.S. Trademark Reg. No. 1,476,530); ZYPAN® (U.S. Trademark Reg. No. 1,982,691); LIGAPLEX® (U.S. Trademark Reg. No. 1,984,258); CATAPLEX® (U.S. Trademark Reg. No. 1,984,251); CONGAPLEX® (U.S. Trademark Reg. No. 1,995,346); MULTIZYME® (U.S. Trademark Reg. No. 2,548,738); ALLERPLEX® (U.S. Trademark Reg. No. 2,321,705); GASTREX® (U.S. Trademark Reg. No. 2,332,945); SP CLEANSE® (U.S. Trademark Reg. No. 2,622,227), GASTRO-FIBER® (U.S. Trademark Reg. No. 2,730,337), and SP GREEN FOOD® (U.S. Trademark Reg. No. 3,665,686).



**VORYS**
**Legal Counsel**

Deal Point Trading
September 26, 2018
Page 3

F.2d 104, 107 (4th Cir. 1991) ("A product is not truly 'genuine' unless it is manufactured and distributed under quality controls established by the manufacturer."). Accordingly, you are infringing on the Standard Process Trademarks.[4]

Even if you purchased or otherwise obtained the products legally from an Authorized Reseller, **the "first sale doctrine" does not protect you from liability for your trademark infringement**. This is because the first sale doctrine does not apply "'when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark holder,'" *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009) (quoting *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001)), or when the alleged infringer does not (or cannot) offer the quality controls that the trademark holder provides. *Shell Oil Co.*, 928 F.2d at 107. For the reasons explained below, the products you sell are materially different from genuine Standard Process Products and do not carry the quality controls of genuine Standard Process Products.

1. <u>The Products You Sell are Materially Different from Genuine Standard Process Products.</u>

Because the products you sell bearing the Standard Process Trademarks, and without the consent of Standard Process, do not come with the same services and benefits that accompany genuine Standard Process Products sold by Authorized Resellers, **they are materially different**. *See Beltronics USA*, 562 F.3d at 1073 (affirming "that material differences may include the . . . services associated with Beltronics' radar detectors").

Authorized Resellers are required to provide customer service concurrently with and after their sales that you cannot provide. Authorized Resellers are required to obtain sufficient knowledge of all products kept in inventory and to be able to advise clients on how to use the products safely and properly. Authorized Resellers must also have sufficient product knowledge to address end-user customer questions and concerns both before and after the sale of the products and should endeavor to respond promptly to customer inquiries. Because you are not an Authorized Reseller, Standard Process cannot ensure that you provide these services to your customers, making the products you sell materially different from genuine Standard Process Products.

Further, consumers who purchase your products are likely to be confused by the lack of information and guidance concerning the use of the product, which damages the reputation of Standard Process and further infringes on the Standard Process Trademarks. *See SKF United States, Inc. v. ITC*, 423 F.3d 1307, 1312 (Fed. Cir. 2005) ("[T]rademarked goods originating

---

[4] For the same reasons, your actions also constitute unfair competition and false advertising. *See Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 478 (2d Cir. 2005) (recognizing that 15 U.S.C. § 1125(a) extends to unregistered trademarks, "false or misleading description of fact," and "false or misleading representation of fact").



**VORYS**
Legal Counsel

Deal Point Trading
September 26, 2018
Page 4

from the trademark owner may have nonphysical characteristics associated with them, including services, such that similar goods lacking those associated characteristics may be believed by consumers to have originated from the trademark owner and, lacking such traits, may mislead the consumer and damage the owner's goodwill.").

> 2. **The Products You Sell do not Adhere to the Rigorous Quality Controls Implemented with respect to Genuine Standard Process Products.**

It is also well-recognized that goods are not genuine, and therefore violate trademark law, if they fail to conform to the trademark holder's quality control standards. *See, e.g.*, *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (holding that "goods are not genuine if they do not conform to the trademark holder's quality control standards"); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 643 (1st Cir. 1992) (holding that the difference in quality controls created a presumption of customer confusion and constituted trademark infringement); *Ahava (USA), Inc. v. J.W.G., Ltd.*, 250 F. Supp. 2d 366, 369 (S.D.N.Y. 2003) (concluding that an unauthorized product "is not considered genuine if the [product] does not meet the trademark owner's quality control standards"). Your unauthorized sale of Standard Process Products without adhering to Standard Process's quality control standards harms both the Standard Process brands and consumers.

Standard Process imposes quality controls that are unique to genuine Standard Process Products, including but not limited to: requiring Authorized Resellers to inspect all products for damage, defect, broken seals evidence of tampering or other non-conformance; requiring Authorized Resellers to store Standard Process Products in certain conditions; forbidding Authorized Resellers from relabeling, repackaging, or altering Standard Process Products; prohibiting tampering with, defacing or otherwise altering any serial number, UPC code, or other identifying information on products or packaging; prohibiting Authorized Resellers from removing, translating or modifying the contents of any label or literature on or accompanying the products; and requiring that Authorized Resellers follow all applicable laws and adhere to Standard Process business practices and policies. Consumers who purchase Standard Process products from you are receiving products that are not subject to these requirements, increasing the likelihood that these consumers could receive damaged products or have an otherwise unsatisfactory experience, causing them to lose confidence in the Standard Process brands. Because the products you sell do not comply with Standard Process's quality controls and do not offer unique benefits available only through Standard Process's Authorized Resellers, they are materially different from Standard Process's genuine products and they illegally infringe on the Standard Process Trademarks. *See, e.g.*, *Ahava (USA), Inc.*, 250 F. Supp. 2d at 369.

In addition, Authorized Resellers are required to assist with recalls and other consumer safety information efforts. Courts have held that when purchasers of unauthorized products are limited in their ability to be informed of recall and safety information, they are not receiving the


**VORYS**
Legal Counsel

Deal Point Trading
September 26, 2018
Page 5

"full bundle of services and product features that typically accompany such a purchase[,]" and therefore, have not received a genuine product. *Beltronics USA, Inc. v. Midwest Inventory Distrib. LLC*, 522 F. Supp. 2d 1318, 1327(D. Kan. 2007), *aff'd Beltronics USA, Inc.*, 562 F.3d 1067. This is yet another reason why the products you sell are materially different from genuine Standard Process products.

      **B.**      **Your Sales of Standard Process Products Tortiously Interfere with Standard Process's Contracts and/or Business Relationships with its Authorized Resellers.**

      Finally, in addition to trademark infringement, your acquisition and resale of any products received from Standard Process's Authorized Resellers constitutes tortious interference with Standard Process's contracts and/or business relationships. Standard Process restricts the manner in which Authorized Resellers may sell Standard Process Products. Authorized Resellers may sell only to end-user customers through authorized channels and are specifically prohibited from selling products to resellers or any person or entity they know or have reason to know intends to resell the products. Any time you purchase products from an Authorized Reseller and then attempt to resell those products, you have caused a breach of the agreement between Standard Process and its Authorized Reseller and/or interfered with Standard Process's agreement and business relationship with its Authorized Reseller. If you continue to sell Standard Process Products, you may be liable for tortious interference with Standard Process's contracts and/or business relationships. *See, e.g., Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235-38 (10th Cir. 2006) (affirming $500,000 damages award for tortious interference with a dealer agreement).

      **III.**      **To Avoid a Lawsuit, You Must Cease and Desist Sales of Standard Process Products Immediately.**

      For the foregoing reasons, if you do not immediately cease all sales of Standard Process Products, Standard Process intends to file a lawsuit against you seeking all available monetary damages—including disgorgement of profits, compensatory damages, attorneys' fees, and investigative and other costs—as well as all injunctive relief to which it is entitled. In connection with its lawsuit against you, Standard Process will investigate and obtain the identities of all individuals and entities involved in your illegal sales, and will seek ownership or de-indexing from search engines of all websites that you use to sell Standard Process Products. If you ignore this notice and any subsequent lawsuit, Standard Process intends to seek and execute a default judgment against you for all of the monetary and injunctive relief outlined above.

      You should also be aware that, if you ignore this letter and continue to unlawfully sell Standard Process Products, you will be subject to personal jurisdiction in Wisconsin where Standard Process is located. *See, e.g., Amini Innovation Corp. v. JS Imps, Inc.*, 497 F. Supp. 2d



Deal Point Trading
September 26, 2018
Page 6

1093, 1106 (C.D. Cal. 2007) (explaining that numerous courts have held that a defendant is subject to personal jurisdiction in the state where a plaintiff mark owner is located if the defendant intentionally infringes the plaintiff's intellectual property while knowing where the plaintiff is located).  This letter serves as notice to you that Standard Process is located in Wisconsin, your infringing sales harm Standard Process, and that the effects of your unlawful actions will be felt in Wisconsin where Standard Process is located if you do not cease your infringing sales.

To avoid litigation, you must immediately and permanently cease and desist selling all Standard Process Products and identify all sources of Standard Process Products you are selling or have sold in the past.  Please email me at Standard_Proc@vorys.com or call me at (614) 324-2938 by no later than 5:00 p.m. Eastern Time on October 3, 2018, to confirm your compliance with the demands set forth herein.

Sincerely,

Tyler B. Pensyl